NOT FOR PUBLICATION                    [Docket No. 6]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 825 PENSION FUND, THE IUOE LOCAL 825 WELFARE FUND, THE IUOE LOCAL 825 APPRENTICESHIP TRAINING AND RE-TRAINING FUND, THE IUOE LOCAL 825 SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND, THE IUOE LOCAL 825 SAVINGS FUND, THE IUOE LOCAL 825 ANNUITY FUND, through THE LOCAL 825 FUND SERVICE FACILITIES | Civil No. 06-3359(RMB)  <br><br> **OPINION** |
| Plaintiffs, | |
| v. | |
| FONDACARO COMPANIES, INC. | |
| Defendant. | |

APPEARANCES:

Paul A. Montalbano
Cohen, Leder, Montalbano & Grossman, LLC
1700 Galloping Hill Road
Kenilworth, New Jersey 07033
     Attorneys for Plaintiffs

**BUMB**, United States District Judge:

     This matter comes before the Court upon a motion by the

Board of Trustees of the International Union of Operating

Engineers ("IUOE"), Local 825 Pension Fund; the IUOE Local 825

Welfare Fund; the IUOE Local 825 Apprenticeship Training and Re-Training Fund; the IUOE Local 825 Supplemental Unemployment Benefit Fund; the IUOE Local 825 Savings Fund; the IUOE Local 825 Annuity Fund (through the Local 825 Fund Service Facilities) (collectively "Plaintiffs"), for the entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b) and enforcement of an arbitration award against Defendant Fondacaro Companies, Inc.

**Background:**[1]

Plaintiffs, the Board of Trustees of the International Union of Operating Engineers, Local 825 Pension Fund, the IUOE Local 825 Welfare Fund, the IUOE Local 825 Apprenticeship Training and Re-Training Fund, the IUOE Local 825 Supplemental Unemployment Benefit Fund, the IUOE Local 825 Savings Fund, the IUOE Local 825 Annuity Fund, through the Local 825 Fund Service Facilities are fiduciaries as defined by ERISA, specifically 29 U.S.C. Sections 1002(14)(A) and 1102.  Each fund is a multi-employer benefit plan as defined in ERISA, administered pursuant to ERISA, 29 U.S.C. Section 1001, et seq. and is maintained pursuant to a Separate Amended Agreement and Declaration Trust.  (Hereinafter the individual funds are collectively referred to as the "Funds").

---

[1]Because Defendant has not appeared in this action, the underlying facts are taken from Plaintiffs' Complaint and Motion Papers.

Between July 1, 2002 and June 30, 2005, Local Union No. 825, International Union of Operating Engineers, (hereinafter "Local 825") and Fondacaro were parties to a collective bargaining agreement ("CBA"), which required Fondacaro to make monthly contributions to the Funds for all bargaining unit employees. (Pls.' Compl. at ¶ 19). Despite this obligation, Fondacaro failed to make the required contributions. (Pls.' Compl. at ¶ 20).

The Funds, while conducting a compliance audit of Fondacaro's books and records for the calender year of 2005, found an under-reporting of hours by Fondacaro. (Pls.' Compl. at ¶ 22). An audit report was issued on January 13, 2006, setting forth a claim of delinquency in the amount of $175,099.00. (Pls.' Compl. at ¶ 22). The Funds made a demand for payment upon Fondacaro, but payment was refused. (Pls.' Compl. at ¶ 23).

On February, 13, 2006, the Funds, through their counsel, filed for arbitration with Arbitrator Gerard Restaino, the neutral arbitrator appointed under the Trust Indenture to hear and decide questions of the delinquency of the participating employer in making contributions to the Funds as required by the Indenture and the CBA. (Pls.' Compl. at ¶ 24). On February 16, 2006, Arbitrator Restaino issued a Notice of Hearing scheduling the hearing to commence on March 29, 2006. (Pls.' Compl. at ¶ 25). The Funds appeared for arbitration on March 29, 2006, but

3

Fondacaro did not appear.  Upon opening of the arbitration hearing, Arbitrator Restaino indicated that Fondacaro had notice of the hearing as shown by a signed certified mail receipt, and he proceeded with the hearing. (Pls.' Compl. at ¶ 26).

At the arbitration hearing, the Funds contended that Defendant Fondacaro failed to remit the proper contributions for its employees on a timely basis as outlined in the CBA. (Pls.' Compl. at ¶ 27).  The Funds introduced the audit report for calender year 2005, and adduced the sworn testimony of the Fund Collection Coordinator in support of the audit report.  The Fund Collection Coordinator also testified that the Fund was able to secure a partial payment through attachment efforts. (Pls.' Compl. at ¶ 27).

On April 10, 2006, Arbitrator Restaino issued his Opinion and Award finding that Fondacaro had breached its obligation to make contributions to the Funds and found that Fondacaro owed a total of $155,864.52 for the period of January 1, 2005, through December 31, 2005, thus acknowledging credit for a $33,311.16 payment received after issuance of the audit report. (Pls.' Compl. at ¶ 28).  The Arbitration Award provided for Fondacaro to pay the Fund interest upon the past due contributions, and included attorney fees, arbitration fees and audit fees. (Id.). The Award also included an obligation for Fondacaro to pay additional attorney's fees, including costs incurred in any post-

judgment collection proceeding.  (Id.).

Fondacaro refused to comply with the arbitration award, although the Funds, through collection attachment efforts, were able to collect partial payment of $9,922.61. (Pls.' Compl. at ¶ 29).  At the time Plaintiffs filed this Complaint, the time period for Defendant to move to vacate, modify or correct the arbitration award had passed without defendant fling a motion pursuant to 9 U.S.C.A. § 12.  (Pls.' Compl. at ¶ 30).

On July 25, 2006, Plaintiffs personally served Fondacaro with a copy of the Summons and Complaint.  Fondacaro has failed to appear, plead or otherwise defend in this matter. Consequently, the Clerk entered default against Fondacaro on September 11, 2006 [Docket No. 5].  On September 12, 2006, Plaintiffs filed the present motion for (1) entry of default judgment against Fondacaro and (2) enforcement of the arbitration award with interest, attorney's fees, and costs.  In total, the Plaintiffs request judgment in the amount of $147,466.41.


**Default Judgment Standard:**

Federal Rule of Civil Procedure 55 governs the entry of a default judgment.  Before a default judgment may be entered pursuant to Rule 55(b), a party must have the clerk of the Court enter a default pursuant to 55(a).  <u>De Tore v. Jersey City Public Employees Union</u>, 511 F. Supp. 171, 176 (D.N.J. 1981).  Courts are

5

authorized to enter a default judgment against a defendant who is properly served but who fails to file a timely responsive pleading pursuant to Federal Rule of Civil Procedure 55(b)(2). Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear. . ., the district court or its clerk is authorized to enter a default judgment solely on the fact that the default has occurred.").

Even if a party has properly followed the requirements of Rule 55, they are not entitled to a default judgment as of right, instead, the entry of such a judgment is left to the sound discretion of the Court. Hritz v. Woma Corp. 732 F.2d 1178, 1180 (3d Cir. 1984). The Third Circuit has stated that "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Id. at 1180-81 (citations omitted).

In evaluating a motion for a default judgment, a court must consider three factors: 1) whether a plaintiff will be prejudiced if default is not granted, 2) whether defendant has a meritorious defense, and 3) whether defendant's delay is the result of culpable misconduct. Carpenters Health & Welfare Fund v. Naglak Design, 1995 U.S. Dist. LEXIS 566, 1995 WL 20848 *2 (E.D. Pa. 1995) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987)).

While a court should accept well-pled factual allegations of

6

the complaint, it need not accept the movant's legal conclusions or factual allegations regarding the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, 2006 U.S. Dist. LEXIS 14027, 2006 WL 680533 (D.N.J. 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)).  The Court must conduct its own inquiry "in order to ascertain the amount of damages with reasonable certainty." In re Industrial Diamonds, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (citing Credit Lyonnais Securities (USA), Inc. v. Alcantara et al., 183 F.3d 151, 155 (2d Cir. 1999).

**Discussion:**

In the Complaint, Plaintiffs allege causes of action pursuant to ERISA and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  The unchallenged factual allegations in the Complaint adequately demonstrate that the Plaintiffs state legitimate claims under ERISA and the LMRA.

Section 515 of ERISA states, in pertinent part, that "every Employer who is obligated to make contributions to a multiemployer plan...under the terms of a collectively bargained agreement shall...make such contributions in accordance with...such agreement."  29 U.S.C. § 1145.  ERISA section 502(a) permits a plan fiduciary to sue an employer who fails to make the

required contributions.  29 U.S.C. § 1132(a).  If a court enters
judgment in favor of the plan fiduciary, ERISA section 502(g)(2)
requires the court to award (1) unpaid contributions; (2)
interest on the unpaid contributions; (3) liquidated damages; (4)
reasonable attorneys' fees and costs; and (5) other relief the
court deems appropriate.  29 U.S.C. § 1132(g)(2).  The Agreement
between the present parties required Fondacaro to make monthly
contributions to the Funds for all bargaining unit employees.  In
addition, there is no dispute that the relevant parties to this
suit qualify as entities that are subject to ERISA's provisions.
Therefore, because the Defendant has not paid its required
contributions as set forth in the Agreement, the Plaintiffs state
a cause of action under ERISA.

     In addition to their ERISA claims, Plaintiffs also request
the work assessments and PAC contributions that Defendant failed
to remit in violation of the Agreement. (See Whittles Affidavit
at ¶¶ 10-11).  Section 301 of the LMRA provides for jurisdiction
in the district courts of the United States in "suits for
violation of contracts between an employer and a labor
organization representing employees in an industry affecting
commerce."  See 29 U.S.C. § 185.  Therefore, because Local 825 is
such a labor organization representing employees in an industry
affecting commerce, Plaintiffs' uncontested allegations that
Fondacaro violated the Agreement by failing to remit the work

assessments and PAC contributions state a cause of action under the LMRA.  See Trustees of Mason Tenders Dist. Council v. Multi Recycling Corp., No. 04-3051 DLC, 2005 WL 3446042, at *4 (S.D.N.Y. 2005) (noting that a labor organization's claims for unpaid dues checkoffs and PAC contributions are governed by the LMRA).

In the instant matter, Defendant has neither filed any responsive pleading indicating why default judgment should not be entered in Plaintiffs' favor, nor did it appear at the arbitration hearing.  Thus, the Court is "not in a position to determine whether [Defendant] has any meritorious defense or whether any delay is the result of culpable misconduct." Carpenters Health and Welfare Fund v. Naglack Design, 1995 U.S. Dist. LEXIS 566 at *7 (E.D. Pa. Jan. 18, 1995).  The only issue then, is whether the Plaintiffs will be prejudiced if a default judgment is denied.  Because delinquent contributions can negatively impact the Plaintiffs' ability to pay their beneficiaries - Plaintiffs would be prejudiced if default judgment was not entered in their favor.  See Carpenters Health and Welfare Fund v. Bold and Clauss Construction, Inc., 2006 U.S. Dist. LEXIS 12802 at * 7-8 (E.D. Pa. Mar. 24, 2006).  Moreover, Fondacaro's failure to make the required contribution payments and remittances is a drain on the Plaintiffs' assets, as is continued litigation in a case where the Defendant chooses not to

9

participate.  <u>See</u> <u>Carpenters Health</u>, 1995 U.S. Dist. LEXIS 566 (finding that failure to make timely payments to plaintiff multi-employer benefit fund prejudices plaintiff).  Because Plaintiffs have no other means of pursuing their claims against Fondacaro, they will be prejudiced if default is not granted.  Accordingly, the relevant factors recommend that entry of default judgment is appropriate and this Court will grant Plaintiffs' motion for entry of default judgment against Defendant.

**Enforcement of Arbitration Award:**

In connection with the entry of default judgment, the Plaintiffs also seek enforcement of the arbitration award against Fondacaro.  Federal district courts have jurisdiction under § 301 of the LMRA not only to compel contract arbitration of labor contracts, but also to enforce arbitration awards made pursuant to such contracts.  <u>Local 336, Am. Federation of Musicians, AFL-CIO v. Bonatz</u>, 475 F.2d 433, 435 (3d Cir. 1973) (citations omitted).

When reviewing an arbitration award, courts must enforce the award "if it is based on an arguable interpretation of the collective bargaining agreement." <u>Exxon Shipping Co. V. Exxon Seamen's Union</u>, 73 F.3d 1287, 1291 (3d Cir. 1996) (citing <u>News America Publications, Inc. v. Newark Typographical Union, Local 103</u>, 918 F.2d 21, 24 (3d Cir. 1990)); <u>see United Transportation</u>

Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 380 (3d
Cir. 1995) (noting that "[a]n arbitration award draws its essence
from the bargaining agreement if the interpretation can in any
rational way be derived from the agreement") (citations omitted).
A court may not overrule an arbitrator's decision just because it
disagrees with the arbitrator's interpretation of the contract.
News America Publications, 918 F.2d at 24.  The court may only
vacate an arbitration award if it is completely "unsupported by
the record or reflects a 'manifest disregard' of the agreement."
Exxon Shipping, 73 F.3d at 1291.

     In the instant action, the arbitrator's award has a rational
basis in the collective bargaining agreements between the
parties.  The undisputed facts in the case demonstrate that from
January 1, 2005, through December 31, 2005, Fondacaro failed to
make the required contributions and remittances in accordance
with the provisions of the Agreement.  As a result, the
Plaintiffs arbitrated their claim against Fondacaro.  The
arbitrator found that Fondacaro was, in fact, delinquent in its
payments under the Agreement, and therefore, entered an award of
$175,099.00 plus penalties, attorney's fees, and arbitration
costs.  After calculating out the additional costs and fees and
subtracting the amounts of $33,311.16 payment received after the
issuance of the audit report, the Arbitrator deemed that the
total amount owed to the Funds was $155,864.52 (this amount

11

includes interest in the amount of $5,365.16.  (Pl.'s Ex. A at
4).  Following the award, Plaintiff's were able to collect
$9,922.61 - bringing the requested total to $145,941.91.


**Prejudgment Interest, Attorneys Fees and Costs:**

        In addition to enforcing the $145,941.91 of what remains of
the arbitration award, which includes the $5,365.16 in interest
that the Arbitrator included in the award, the Plaintiffs seek
attorneys' fees and costs in the amount of $1,524.50.  The
agreement provides that in any action to collect delinquent
contributions from a contributing employer, the Funds are
entitled to collect (1) the delinquent contributions, (2)
interest at a rate of two percent above the prime rate, (3)
liquidated damages at 20 percent, (4) attorney's fees and costs,
and (5) auditor's fees.  (Affidavit of Joseph Whittles at ¶13).

        1. Pre-judgment Interest

        Generally, district courts have discretion to determine
whether to allow prejudgment interest in claims arising under
federal labor law.  Glass Molders, Pottery, Plastics & Allied
Workers Int'l Union v. Owens-Illinois, Inc., 758 F. Supp. 962,
975 (D.N.J. 1991) (citing Ambromovage v. United Mine Workers, 762
F.2d 972, 982 (3d Cir. 1984)).  Prejudgment interest is usually
available when the damages from a breach of contract are
ascertainable with mathematical precision.  Eazor Express, Inc.

v. Intl'l Brotherhood of Teamsters, 520 F.2d 951, 973 (3d Cir. 1975).  Because the fringe benefit contributions, work assessments, and PAC contributions owed by Fondacaro are all readily ascertainable amounts, an award of prejudgment interest is appropriate in this matter.  Therefore, the Court will grant the Plaintiffs' request for $5,365.16 in prejudgment interest already included in the total requested amount.

    2.  Attorney's Fees and Costs

In most arbitration enforcement actions, the Court has discretion to award attorney's fees and costs when one party, without justification, refuses to abide by an arbitration award. United Steelworkers of America, AFL-CIO v. Interpage Corp. Shenango China Division, 447 F. Supp. 387, 393 (W.D. Pa. 1978); see Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 205 (3d Cir. 1982).  Here, Fondacaro has (1) refused to abide by the arbitration award; (2) failed to act promptly (or in any way) to vacate the award; (3) failed to appear or defend in this action; and (4) failed to otherwise raise any substantial legal issue.  Accordingly, the Court finds that the facts of the case justify an award of attorney's fees against Fondacaro.

Additionally, the Complaint states that this action is, at least partially, a collection action pursuant to Sections 502(g)(2) and 515 of ERISA.  Together, those two ERISA sections provide that reasonable attorneys' fees and costs shall be

13

awarded when the Court enters a judgment enforcing an employer's obligation to pay delinquent contributions. 29 U.S.C. §§ 1132 (g)(2), 1145. Because the Court's entry of judgment in this case is a judgment which enforces Fondacaro's obligation to pay delinquent contributions by confirming the arbitration award, the mandatory attorneys' fees provisions in ERISA appear to be applicable. See Trustees of Amalgamated Ins. Fund v. Geltman Industries, Inc., 784 F.2d 926, 932 (9th Cir. 1986) (finding that the mandatory attorneys' fees provisions in Section 1132(g) applies to an action where the Plaintiffs seek to enforce an arbitration award regarding delinquent withdrawal payments).

Paul A. Montalbano, attorney for the Plaintiffs, has submitted a detailed affidavit in support of Plaintiffs' request for fees and costs. The affidavit provides that Montalbano was admitted to practice law before this Court in 1977 and that has spent 4.35 hours of work on this matter at an hourly rate of $270.00.[2] The affidavit also contains a chart which provides the date, time spent, and description of all services rendered. In

---

[2] Although the reasonableness of an attorney's hourly rate is usually based on the prevailing market rates in the relevant community, neither party here has submitted any evidence of the prevailing market rate for the services rendered. In the absence of such evidence, and the absence of any objection to the charged rate, the Court will assume that the rates charged are the prevailing market rates. Neyer, Tiseo & Hindo, Ltd. v. Russell, No. Civ. A. 92-2983, 1994 WL 15817, at *2 (E.D. Pa. Apr. 29, 1994) (finding that where neither party has submitted any evidence of the prevailing market rates, the Court would assume that the charged rates actually were the prevailing rates).

14

the 4.35 hours Montalbano billed on this matter, he drafted and reviewed the Summons and Complaint, and researched the Federal Arbitration Act.  Additionally, Plaintiff seek costs in the amount of $350.00 to cover the filing fee.  Defendants, who have not appeared in this action have not objected to or provided evidence to the Court showing that the requested amount is unreasonable;  the Court will award attorneys' fees and costs in the requested amount of $1,524.50.

**Conclusion:**

In light of the foregoing, the Court will grant Defendant's Motion for Entry of Default Judgment and Enforcement of the Arbitration Award.  The Court will enter judgment in favor of the Plaintiffs in the amount of $145,941.91 and will award Plaintiffs attorney's fees and costs in the amount of $1,524.50, totaling $147,466.41.

An accompanying Order shall issue this date.


Dated: February 13, 2007          s/Renée Marie Bumb
                                  RENÉE MARIE BUMB
                                  United States District Judge